48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Marcus TABB, Defendant/Appellant.
 No. 93-2672.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 6, 1995.*
Decided March 8, 1995.
 
 Before PELL, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Marcus Tabb was convicted by a jury of possession with the intent to distribute cocaine, 18 U.S.C. Sec. 2; 21 U.S.C. Sec. 846, and was sentenced to 121 months of imprisonment to be followed by five years of supervised release. Thereafter, Tabb moved for a new trial based on newly discovered evidence. Fed.R.Crim.P. 33. The district court denied the motion, and Tabb appeals. We conclude that the district court did not abuse its discretion in denying the motion because Tabb has failed to establish that the evidence came to his knowledge only after trial, a requirement Tabb concedes must be demonstrated in order to justify a new trial. See United States v. Hubbard, 22 F.3d 1410, 1423 (7th Cir.1994); United States v. DePriest, 6 F.3d 1201, 1216-17 (7th Cir.1993).
 
 
 2
 In his motion for new trial, Tabb sought to introduce evidence that allegedly showed that the government's key witness, Kenneth Meek, perjured himself. Meek was a target in a government reverse-buy sting operation, and had a social relationship with Tabb's aunt. Meek testified at Tabb's trial that Tabb negotiated, via telephone, to purchase five kilograms of cocaine at $20,000 per kilogram from him, and that on January 15, 1993, Tabb came to his hotel room at the Executive Plaza Hotel in Chicago with a gym bag containing $100,000. According to Meek, Tabb left the hotel with the money before Meek was able to contact the confidential informant concerning the time and place for the transaction, but later appeared with the money in the lobby of the Embassy Suites in Chicago where the deal was finally set to take place. While the parties were in the lobby, an undercover agent, Vallejo, looked inside the gym bag and saw a significant amount of money wrapped with rubber bands. The parties then went upstairs to a hotel room where Agent Vallejo told Tabb that the five kilograms of cocaine were pure and that they could do business again in the future. As Agent Vallejo left the room, an arrest team took custody of Tabb and Meek. Tabb was wearing a bullet proof vest when he was arrested.
 
 
 3
 In his defense, Tabb denied ever having any drug dealings with Meek or having any knowledge that the January 15 transaction was a drug transaction. He testified that he and Meek's only connection was through Meek's relationship with his aunt, and that he had gone to Meek's hotel the day before the arrest at Meek's request. According to Tabb, while he was there, Meek took him into the bathroom and gave him the gym bag containing the $100,000. Tabb testified that Meek told him that he had a group of foreign sellers from whom he intended to buy some airplane parts the next day, but that he did not want the sellers to know he was the purchaser. Meek then offered him $1,000 to carry the cash to the sale, and gave him a bullet proof vest because Meek was not sure "how this thing will go." Tabb further testified that a woman named Bernice Arleen Patton had accompanied him to Meek's hotel room, and that she remained with Meek after he left. According to Tabb, he merely followed Meek's instructions on the day of the transaction. Tabb's version of the events, however, was contradicted by Meek's testimony; Meek denied promising Tabb $1,000 for delivering the bag of money or providing the $100,000 purchase money and the bullet proof vest.
 
 
 4
 The evidence that Tabb claims to be "newly discovered" are statements from Patton, the woman who had accompanied Tabb to Meek's hotel the day before the drug transaction, and Tabb's aunt, Dorothy Buckner. Neither woman testified at Tabb's trial. Patton's affidavit stated that when they visited Meek's hotel room on January 14, Tabb was not carrying anything as they entered the hotel, but that after Meek and Tabb went into the bathroom to talk, Tabb came out of the bathroom carrying a dark colored bag which he took with him when he left the hotel. Patton stated, however, that she did not know what was in the bag or what Meek and Tabb had discussed in the bathroom. Buckner's statement provided that she and Meek had a social relationship, and that they had exchanged telephone calls while she was at Tabb's residence in Chicago.
 
 
 5
 We conclude that Tabb can not establish that he first learned of this evidence only after trial. As the district court properly found, the identities of the witnesses and the substance of their proposed testimony were known to Tabb before trial. Tabb was the one who brought Patton to Meek's hotel room and thus, knew that her testimony could corroborate his own. Similarly, Tabb was aware of his aunt's relationship with Meek and could have called her as a witness to support his claim that he and Meek's association was limited. Tabb suggests that both witnesses were unavailable to testify during his trial, yet there is no indication that he subpoenaed either of the two witnesses or otherwise notified the court that they were unavailable to testify. Tabb's argument that he should not have been expected to anticipate perjury on the part of a government witness is similarly unavailing. Tabb learned of Meek's alleged perjury as soon as Meek denied that he had provided the $100,000 to Tabb. Tabb did not ask for a continuance, and only mentioned those two witnesses two days after the jury returned a verdict against him. There is no "newly discovered" evidence. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record